IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OXANA RUDENCO,

Plaintiff, No. 2:09-cv-01547 KJN

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant. ORDER

_______________________________/

Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff contends that the administrative law judge in this case, Administrative Law Judge Theodore T.N. Slocum ("ALJ"), erred by: (1) improperly rejecting the medical opinion of one of her treating physicians, Anna Mirzoyan, M.D. ("Dr. Mirzoyan"); (2) discounting plaintiff's testimony, in part, as not credible; and (3) not

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301. (Dkt. Nos. 10, 11.) This case was reassigned to the undersigned by an order entered February 9, 2010. (Dkt. No. 18.)

finding that certain alleged conditions were severe at step two of the applicable five-step sequential analysis. (See Pl.'s Mot. for Summ. J. at 4, Dkt. No. 19.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 22.) Plaintiff filed a reply brief. (Dkt. No. 23.)

For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND[2]

Plaintiff, who immigrated to the United States from the Republic of Moldova in September 2003, was 31 years old at the time she filed her application for SSI benefits. (Administrative Transcript ("AT") 18, 24, 73.) She completed a high school education, can speak some English, and took some community college classes. (AT 19, 24, 26, 161-62.) Plaintiff has little work history, but worked as a cafeteria employee at the community college for approximately two years. (AT 26, 31, 93.) She claims to have ceased working and going to school, in part, because of her obesity problems and headaches. (AT 30, 31.)

### A. Procedural Background

On February 20, 2007, plaintiff filed an application for SSI benefits, alleging a disability onset date of May 24, 2006. (AT 73-81, 92.) The Social Security Administration denied plaintiff's application initially and upon reconsideration. (AT 50-51, 54-58, 60-64.) Plaintiff filed a timely request for a hearing, and the ALJ conducted a hearing regarding plaintiff's claims. (AT 20-49, 66.) Plaintiff, who was represented by counsel at the hearing, was the only person to testify at the hearing.[3]

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant the issues presented by the parties' respective motions.

[3] Plaintiff's impairments that form the basis for her application for benefits appear to largely stem from her morbid obesity. With respect to plaintiff's obesity, it bears noting that the

In a decision dated January 29, 2009, the ALJ denied plaintiff's application, finding that plaintiff could perform jobs that exist in significant numbers in the national economy.[4] (AT 12-19.) The ALJ's decision became the final decision of the Commissioner

---

ALJ made a number of sarcastic remarks regarding plaintiff's weight and diet during the hearing. (See, e.g., AT 34, 39, 42, 45-47.) For example, when plaintiff testified that she was trying to lose weight by eating lettuce and cabbage, the ALJ responded: "Did your doctor tell you that your diabetes came from eating all that lettuce and cabbage?" (AT 39.) At another point in the hearing, the ALJ stated: "She's had a fatty liver and she's had gallstones, all of which indicates lots of fatty intake in the diet, which doesn't come from lettuce and cabbage." (AT 47.) He also made multiple references to the phrase "we are what we eat" that can only be described as hostile or sarcastic. (AT 42 ("Did your doctor ever tell you that you are what you eat?"); AT 45 ("But we are what we eat. It's called choice.").) It is unfortunate that ALJ Slocum chose to infuse the hearing with a level of hostility and sarcasm that is unnecessary and unhelpful.

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential

when the Appeals Council denied plaintiff's request for review. (AT 1-3.) Plaintiff subsequently filed this action.

B. Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since February 20, 2007, the date she filed her application for benefits. (AT 14.) At step two, the ALJ concluded that plaintiff had the following "severe" impairments: morbid obesity, chronic leg pain, and headaches. (AT 14.) Relevant to plaintiff's motion for summary judgment, the ALJ found that the following claimed impairments were not "severe" within the meaning of the Act: hypertension, diabetes, sleep apnea, shortness of breath, and an adjustment disorder with depressed mood. (Pl.'s Mot. for Summ. J. at 8-9; AT 14-15.) At step three, the ALJ determined that plaintiff's impairments, whether alone or in combination, did not meet or medically equal any impairment listed in the applicable regulations. (AT 15.)

The ALJ further determined that plaintiff had the residual functional capacity ("RFC") "to perform the full range of sedentary work as defined in 20 CFR 416.967(a)."[5] (AT 15.) In assessing plaintiff's RFC, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they conflicted with the assessed RFC. (AT 15-17.)

Having assessed plaintiff's RFC, the ALJ found at step four that plaintiff "has no

---

evaluation process proceeds to step five. Id.

[5] The applicable regulation, 20 C.F.R. § 416.967(a), defines "sedentary work" as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

past relevant work." (AT 18.) At step five, the ALJ concluded that, considering plaintiff's age, education, work experience, and RFC, the Medical-Vocational Guidelines directed a finding that plaintiff was not disabled. Specifically, he determined that as a result of plaintiff's ability to perform the full range of sedentary work, Medical-Vocational Rule (also referred to as a Medical-Vocational Guideline) 201.27[6] directed a finding that plaintiff was not "disabled" within the meaning of the Act. (AT 18-19.)

II. ISSUES PRESENTED

Plaintiff presents three issues for review. First, she argues that the ALJ failed to give controlling weight to the opinion of plaintiff's treating physician, Dr. Mirzoyan, regarding plaintiff's inability to perform sedentary work. Second, plaintiff argues that the ALJ's finding that plaintiff's testimony was not entirely credible is not supported by substantial evidence in the record. Finally, plaintiff argues that the ALJ erred by finding that her alleged impairments of hypertension, diabetes, sleep apnea, shortness of breath, and an adjustment disorder with depressed mood were not severe at step two of the analysis.

////

---

[6] The Ninth Circuit Court of Appeals has described the Medical-Vocational Guidelines, or the "grids," which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2, as follows:

> The grids are applied at the fifth step of the analysis under 20 C.F.R. § 404.1520, and present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. [Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir.1999).] The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress --a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. Id. If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled. Heckler v. Campbell, 461 U.S. 458, 461, 103 S.Ct. 1952, 76 L.Ed.2d 66 . . . (1983).

Tommasetti v. Astrue, 533 F.3d 1035, 1043 n.4 (9th Cir. 2008) (modifications in original) (quoting Lounsbury v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006)).

III. STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

IV. ANALYSIS

A. The ALJ Did Not Err In Rejecting Dr. Mirzoyan's Opinion

Plaintiff first contends that the ALJ erred by rejecting, and not giving controlling weight to, the opinion of Dr. Mirzoyan, one of plaintiff's treating physicians who opined that

plaintiff could not perform sedentary work.  The undersigned concludes that the ALJ's rejection of Dr. Mirzoyan's opinion is free of error and supported by substantial evidence.

        Dr. Mirzoyan completed a form, dated September 12, 2008, which included conclusions that plaintiff could not perform a full range of sedentary work at her current weight and could not work an eight-hour workday for five days per week.[7]  (AT 321-24.)  Purportedly based on a physical exam and lab tests, Dr. Mirzoyan listed plaintiff as having primary diagnoses of morbid obesity and migraine headaches, and secondary diagnoses of "metabolic syndrome" with pre-diabetes[8] and an adjustment disorder with depressed mood.  (AT 321.)  She opined that in an eight-hour workday, plaintiff could walk one to two hours, stand for one to two hours, and sit for two to four hours.  (AT 321.)  She further opined that plaintiff could lift and/or carry between ten and twenty pounds occasionally, was totally restricted in climbing stairs and ladders, was unrestricted in bending, and required an undefined number of rest periods during the day.  (AT 322.)  Dr. Mirzoyan also related that plaintiff was feeling depressed secondary to increased weight.  (AT 322.)  Finally, she indicated that she expected plaintiff's condition to improve as a result of potential weight reduction surgery.  (AT 323.)

        The ALJ considered Dr. Mirzoyan's opinions, but discounted them as follows:

> The undersigned did consider the medical opinions of Dr. Mirzoyan but gave them only minimal weight as Kaiser treating records did not contain clinical or diagnostic findings to support her opinions.  They were inconsistent with the [State Agency] determinations and the internal medicine [consulting examiner] medical opinions, and they were inconsistent with the claimant's daily activities, particularly her ability to attend college and go to a 24 hour fitness center.  Lastly, they were not

---

[7] The form completed by Dr. Mirzoyan defined sedentary work as requiring sitting for six hours in an eight-hour workday, a certain amount of walking and standing, frequent light lifting and/or carrying of small items, and an ability to lift a maximum of ten pounds.  (AT 324.)

[8] Dr. Mirzoyan indicated that the diagnosis of metabolic syndrome was "new."  (AT 321.)  One medical reference text generally defines metabolic syndrome as follows: "Metabolic syndrome, also called syndrome X, is characterized by excess abdominal fat causing at least two of the following: insulin resistence, dyslipidemia, and hypertension.  Causes, complications, diagnosis, and treatments are similar to those of obesity."  Mark H. Beers, M.D., et al., eds., The Merck Manual of Diagnosis and Therapy 61 (Merck Research Labs., 18th ed. 2006).

        > accorded controlling weight as the doctor and Kaiser records contain no evidence of hospitalizations, emergency room treatment, treatment at a pain clinic, or that she underwent any surgery or pain injections.

(AT 18.)

Instead of adopting Dr. Mirzoyan's opinion regarding plaintiff's functional limitations, the ALJ found that plaintiff could perform a full range of sedentary work based on the opinion of a consulting doctor of internal medicine, Sanford Selcon, M.D., the reports of a State agency reviewing physician, N.S. Dhaliwal, M.D., and plaintiff's daily activities. (AT 18.)

Dr. Selcon, who evaluated available medical records and conducted a complete internal medicine examination of plaintiff, provided a lengthy report of his examination, dated May 29, 2007. (AT 219-25.) He stated his impression that plaintiff suffered from morbid obesity, hypertension, and chronic leg pain, and provided the following functional assessment:

> The number of hours that the claimant could sit in an 8-hour work period is without limitations. The number of hours that the claimant could stand/walk in an 8-hour work period is up to 2 hours with breaks in between. The amount of weight that the claimant could lift/carry is 25 pounds occasionally. There are no postural limitations for single event of climbing, stooping, kneeling, and crouching. There is no limitation to manipulation. There are no visual, communicative, or workplace environmental limitations.

(AT 222.)

On or around June 11, 2007, Dr. Dhaliwal, a reviewing physician, completed a "Physical Residual Functional Capacity Assessment" (AT 226-30) and a "Case Analysis" (AT 242-44) with respect to plaintiff. In his RFC assessment, Dr. Dhaliwal concluded that plaintiff: could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; could stand and/or walk for a total of two hours in an eight-hour workday; could sit with normal breaks for a total of six hours in an eight-hour workday; had no limitations in terms of pushing and pulling; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds. (AT 227-28.) He also found no manipulative, visual, communicative, or environmental limitations. (AT 228-29.) Dr. Dhaliwal's case analysis is in

accord with his functional assessment. In both reports, he stated that he agreed with the consulting examiner's medical source statement, which appears to refer to Dr. Selcon's assessment. (See AT 230, 243.)

Turning to the applicable standards, the medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id. If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)).

Here, Dr. Mirzoyan's opinion that plaintiff could not perform sedentary work was contradicted by the opinions of Drs. Selcon and Dhaliwal. Accordingly, the ALJ was required to provide specific and legitimate reasons in support of his rejection of Dr. Mirzoyan's treating opinion. The undersigned concludes that the ALJ provided such reasons.

First, the ALJ reasoned that plaintiff's medical records did not contain clinical or diagnostic findings to support Dr. Mirzoyan's opinions regarding plaintiff's functional limitations. See Tommasetti, 533 F.3d at 1041 (affirming the ALJ's rejection of a treating

physician's proposed functional limitations where they were unsupported by medical records); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (affirming rejection of treating physician's opinion regarding functional limitations where such limitations were unsupported by treatment notes); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming the ALJ's rejection of a treating physician's opinion regarding the existence of impairments where it was unsupported by a rationale, treatment notes, or objective medical findings).  Plaintiff correctly notes that the medical records support that plaintiff reported suffering from migraine headaches, and was found to have leg swelling that caused her to be stressed and anxious.  (Pl.'s Mot. for Summ. J. at 6 (citing AT 337-38, 348.)  However, none of these records support the extreme limitations found by Dr. Mirzoyan that are listed above.

Second, the ALJ stated that Dr. Mirzoyan's opinions were contradicted by the opinions of Dr. Selcon, who independently examined plaintiff, and Dr. Dhaliwal, who reviewed the medical records and agreed with Dr. Selcon's functional assessment.  Dr. Selcon's opinion alone, which is based on an independent medical examination, is substantial evidence that supports the rejection of Dr. Mirzoyan's treating opinion.  Dr. Dhaliwal's medical reports also support the ALJ's rejection of Dr. Mirzoyan's opinions.  See Tonapetyan, 242 F.3d at 1149 ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Third, the ALJ reasonably concluded that Dr. Mirzoyan's opinions regarding plaintiff's functional limitations were undermined by plaintiff's daily activities, which included plaintiff's abilities to attend college classes and engage in limited exercise at a gym.  Although

reasonable minds could differ in assessing these daily activities, the undersigned cannot conclude under the applicable, deferential standard, that the ALJ improperly considered plaintiff's activities in rejecting Dr. Mirzoyan's opinions.

Fourth, the ALJ rejected Dr. Mirzoyan's opinions based on the lack of "evidence of hospitalizations, emergency room treatment, treatment at a pain clinic, or that [plaintiff] underwent any surgery or pain injections." (AT 18.) The undersigned does not credit this reason as properly supporting the rejection of Dr. Mirzoyan's medical opinion. Although a conservative treatment plan can be the basis for rejecting a treating physician's medical opinion, the ALJ did not adequately explain why Dr. Mirzoyan's opinion regarding functional limitations could only be credible if plaintiff could provide evidence that she was hospitalized, was treated at an emergency room or pain clinic, or underwent surgery or received pain injections. Without a more informative explanation by the ALJ, the undersigned cannot credit this reason for rejecting Dr. Mirzoyan's opinion.

Nevertheless, the undersigned concludes that the ALJ's rejection Dr. Mirzoyan's opinion regarding plaintiff's functional limitations is supported by sufficient, specific and legitimate reasons. Thus, the ALJ did not commit error.[9]

   B.   The ALJ's Credibility Determination Is Supported By Substantial Evidence

Plaintiff also contends that the ALJ improperly found that plaintiff's testimony regarding her subjective complaints of pain and functional limitations was not credible to the extent that it was inconsistent with the assessed RFC. Plaintiff forwards two reasons in support

---

[9] Plaintiff also alleges that the ALJ incorrectly indicated that the "consultative examiner assessed a sedentary capacity." (Pl.'s Mot. for Summ. J. at 4 (citing AT 16).) The ALJ did not state that the consultative examiner, Dr. Selcon, "assessed" a sedentary capacity. He stated that Dr. Selcon's "functional assessment indicated the claimant could perform sedentary work (Exhibit 4F)." (AT 16.) The ALJ's statement is reasonably construed as meaning that Dr. Selcon's assessment consists of limitations that are consistent with a sedentary capacity, which involves lifting no more than 10 pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; sitting; and a certain amount of walking and standing. See 20 C.F.R. § 416.467(a). Dr. Selcon's functional assessment for plaintiff, which is recounted above, is consistent with a sedentary work capacity.

of her attack on the ALJ's credibility finding. First, she claims that the ALJ's credibility determination is "indecipherable" and then, ironically, makes an ambiguous statement that the ALJ's decision "may or may not be summarizing the medical record in order to reject Ms. Rudenco's credibility . . . , but it does not do so in any way that convinces." (Pl.'s Mot. for Summ. J. at 8.) It is unclear exactly what is plaintiff's argument in this regard. Second, plaintiff argues that the ALJ relied on plaintiff's daily activities in partially rejecting her testimony, but does not specifically state why that is improper. (Id.)

In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

504 F.3d at 1035-36 (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in

second-guessing." Id. at 959.

Here, the ALJ discounted plaintiff's testimony regarding her pain and functional limitations for several reasons. For example, he noted that her testimony was inconsistent with the fact that "no physical difficulties were observed when [plaintiff] filed her application" for benefits. (AT 18.) He further related that plaintiff stated in her application that she "did not need help with personal care, hygiene or upkeep of a home." (AT 18.) The ALJ also cited evidence of plaintiff's daily activities that were "at least consistent with sedentary work," which included going to college, washing dishes, cooking, doing the laundry, shopping, paying bills, attending church, doing homework, knitting, sewing, and exercising on a treadmill and exercise bicycle on a limited basis. (AT 17-18.) He also referred to the fact that Dr. Selcon's assessment indicated that plaintiff could perform sedentary work. (AT 17-18.) Taken together, and without a more specific and persuasive argument from plaintiff, the undersigned finds that ALJ's reasons for partially discounting plaintiff's testimony are clear and convincing. Accordingly, the ALJ did not err in making his credibility finding.

        C.       The ALJ Did Not Err At Step Two

Finally, plaintiff argues that the ALJ erred by concluding that the following impairments were not severe at step two of the sequential analysis: hypertension, diabetes mellitus, sleep apnea, shortness of breath, and an adjustment disorder with depressed mood. (Pl.'s Mot. for Summ. J. at 8-10.) She contends that these impairments constitute more than "slight abnormalities" and that, as a result, the ALJ should have considered them to be severe.

At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or combination of impairments. See 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996). An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months." See 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909. Basic work activities refer to "the

abilities and aptitudes necessary to do most jobs."[10]  20 C.F.R. § 416.921(b).

Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290.  The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account."  Bowen, 482 U.S. at 153.  "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and quotation marks omitted).

The ALJ found that plaintiff did not have a severe mental impairment, including an adjustment disorder with depressed mood.  (AT 14-15.)  In so concluding, the ALJ relied on the psychiatric consultative examination report from Timothy Canty, M.D., resulting from an examination dated May 2007.  (AT 14, 213-16.)  Dr. Canty stated that plaintiff had "an underlying apprehension and a certain amount of reactive emotional symptoms based on her significant obesity," but that these symptoms did not indicate a psychiatric condition or diagnosis and that plaintiff "does not have significant limitations to work."  (AT 14, 216.)  The ALJ also

---

[10] The applicable regulation provides examples of such "abilities and aptitudes":

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

reviewed treating records from the period of April 2005 through August 2008 that revealed no effects of a purported mental impairment on plaintiff's ability to do basic work activities. Furthermore, the ALJ noted that there was no evidence of any psychiatric hospitalizations, crisis center contacts, treatment at county mental health facilities, referrals to mental health providers, or that plaintiff was taking medication or seeking treatment for her alleged mental impairment. This record indicates that plaintiff's adjustment disorder did not have more than a minimal effect on her ability to work and, accordingly, the ALJ properly found no severe mental impairment.

Plaintiff relies on Dr. Mirzoyan's functional assessment and one of Dr. Mirzoyan's treatment records, which in turn reflects plaintiff's self-report of limitations stemming from her mental condition, in support of her claim that she has a severe adjustment disorder. However, the undersigned concludes that the plaintiff has not met her burden to show that the ALJ erred at step two on the basis of these records because the undersigned already found that the ALJ's rejection of Dr. Mirzoyan's medical opinion and plaintiff's credibility, in part, were proper. Accordingly, the ALJ did not err at step two regarding plaintiff's claimed mental impairment.

The ALJ also found that plaintiff did not have severe impairments in the form of hypertension, diabetes mellitus, sleep apnea, and shortness of breath, all largely due to "minimal evidence of treatment." (AT 15.) The ALJ discussed at some length the absence of evidence of treatment for these conditions. In short, although plaintiff assails the ALJ's conclusions on the grounds that the reasons provided are not sufficient or are based on improper step two criterion, she does not cite authority that suggests as much and cites no evidence in support of her contention that her hypertension, diabetes mellitus, sleep apnea, or shortness of breath had more than a minimal impact on her ability to do basic work activities. For example, she relies on the fact that she missed her first examination with Dr. Selcon because she became ill with hypertension, vertigo, and nausea, and that she was taken to the hospital by ambulance. (AT 219.) However, the record indicates that her dizziness, nausea, and weakness "completely

resolved." (AT 220.) Otherwise, plaintiff simply recounts some varying blood pressure readings and the fact that she wore a heart monitor in order to substantiate that her conditions were indeed severe. This is insufficient to meet her burden.

In sum, plaintiff has not met her burden to show that the ALJ erred at step two. The ALJ adequately concluded that plaintiff's claimed conditions other than obesity, headaches, and leg pain did not interfere with her ability to do basic work activities and, thus, were not severe within the meaning of the Act.

V. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. Judgment be entered in favor of the Commissioner.

DATED: September 21, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE